IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | CASE NO. BK11-40496-TJM |
| | ) | |
| COPPER CREEK ESTATES – | ) | CH. 11 |
| GRAND ISLAND, L.L.C., | ) | |
| | ) | |
| Debtor(s). | ) | |

## ORDER

Hearing was held in Lincoln, Nebraska, on June 29, 2011, regarding Fil. #20, Motion to Reject Lease or Executory Contract, filed by the debtor, and Fil. #24, Objection to Debtor's Motion to Reject Executory Contracts Held by Chief Industries, Inc., filed by Chief Industries, Inc. Trev Peterson appeared for the debtor, Stephen Nelsen appeared for Chief Industries, Inc, and Bruce Hart appeared for Larry Paulsen.

The debtor is a developer of land in Hall County, Nebraska. Once developed, the platted lots were intended to be sold for use by purchasers for construction of personal residences. The debtor entered into an agreement with Chief Industries, Inc. ("Chief"), whereby Chief would deliver to the debtor $1,000,000.00 to be used by the debtor to develop the land. As consideration for the payment, Chief received an exclusive right to sell lot purchasers modular homes built by a division of Chief called "Bonna Villa Homes." In other words, the agreement provided that once a lot was purchased, the purchaser could only place upon that lot a modular home manufactured by Bonna Villa.

Chief did provide the $1,000,000.00 to the debtor and the debtor placed restrictive covenants on the development which included the requirement that only Bonna Villa homes could be placed on the land in the development. The declaration of restrictive covenants was properly executed and recorded.

The agreement concerning the $1,000,000.00 and the exclusive right of Bonna Villa was entered into in September of 2005. It is called "AGREEMENT FOR PREPAID REBATES" (hereafter "Agreement") and is in the bankruptcy file at Exhibit A to Document 20-1. The $1,000,000.00 and additional monies loaned by Five Points Bank in Grand Island, Nebraska, and other funds were used from 2005 through 2007 to develop the infrastructure for 56 lots. During that time, five lots were sold. No lot purchaser has placed a home on a lot. Sales of the lots have completely halted.

This Chapter 11 petition was filed in February of 2011. According to Larry Paulsen, an investor, member of the limited liability company, and a creditor who testified as the debtor's representative at the first meeting of creditors, the purpose of the bankruptcy filing is to eliminate the restrictive covenant regarding the exclusive rights of Bonna Villa. He testified that he and the other members believe that one of the reasons the lot sales have halted is the requirement that the lot purchaser may place only a Bonna Villa home on the lot. It is his belief that if the restrictive covenant is eliminated, sales will rebound.

The first step taken to obtain the elimination of the restrictive covenant is this motion to reject the AGREEMENT FOR PREPAID REBATES on the theory that it is an executory contract. The movant takes the position that the Agreement is executory because there are continuing obligations by both the debtor and Chief. On the debtor's side, it has an obligation to develop the

land and sell the lots. On Chief's side, it has the obligation to provide homes as requested by lot purchasers, to take a certain number of lots as repayment for the $1,000,000.00 advance, and to release a pledge of a member's ownership interests which were provided to Chief in the Agreement.

Chief has objected to the motion to reject the Agreement. It takes the position that its sole obligation under the Agreement was to provide the $1,000,000.00, which it had done. It further takes the position that the portion of the Agreement that discusses taking ownership of lots is not an obligation but is a right given to it and which it may or may not exercise. Finally, according to affidavit testimony from a representative of Chief, it never did take a pledge of ownership interests in the L.L.C. and, therefore, has no obligation to do anything with such ownership interests.

As noted by the movant, "[The Eighth Circuit] has defined an executory contract as 'a contact under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other.'" Kaler v. Craig (In re Craig), 144 F.3d 593, 596 (8th Cir. 1998) (citations omitted).

The determination of whether a contract is executory, and therefore subject to being rejected, requires a review of the language of the contract to determine what the obligations of the parties were in the first place. There is no question that the AGREEMENT FOR PREPAID REBATES required the debtor to obtain all legal approvals for the creation of a subdivision, to obtain additional capital and a bank loan, declare restrictive covenants, provide semi-annual reports of sales to Chief, and, if requested by Chief, if a minimum of 160 homes were not placed on the lots by the second anniversary of its first lot sale, to deed a sufficient number of lots in the development to satisfy the unearned prepaid rebate based upon a formula. There is no specific obligation to sell the lots, although such an obligation can be inferred because that is the whole point of development of the land.

Chief was obligated, after certain conditions were met by the debtor, to deliver $1,000,000.00 to the debtor. Paragraph 2(d) of the Agreement states,

> The sum of One Million Dollars ($1,000,000.00) represents a prepaid rebate to Developer of Two Thousand Dollars ($2,000.00) per manufactured residential unit for homes to be placed upon the five hundred forty (540) lots to be contained within Developer's subdivision or additions thereto. The cash rebate equal to Two Thousand Dollars ($2,000.00) is in exchange for Manufacturer receiving exclusive right to provide the initial manufactured homes to be located upon each lot or lots within the Developer's subdivisions.

Paragraph 4 of the Agreement provides, in the first sentence, "It is the intention of the parties that the prepaid rebate advanced by Manufacturer shall not have to be repaid."

Paragraph 5 of the Agreement states,

> W.C. Baker, the principal member of Developer, agrees to personally pledge to Manufacturer as initial collateral for this Agreement Twenty-Five Percent (25%) of the membership interest issued by Copper Creek Estate – Grand Island, L.L.C., as security for Developer's performance under this Agreement. Manufacturer agrees to release annually from the pledge Agreement a percentage of member units

pledged as collateral equal to Five Percent (5%) per year provided the sales quota goal of one hundred (100) units per year is reached. In the event the annual sales goal quota is not reached, the percentage of member units pledged to be released annually shall be equal to the ratio between the actual number of manufactured homes sold per year for placement on Developer's project divided by the quota goal of one hundred (100) units annually multiplied by Five Percent (5%).

The agreement does not require Chief to sell any homes to lot purchasers.

There is nothing else in the Agreement concerning an obligation by Chief. The evidence is that no pledge of member units was ever made so Chief has no ongoing obligation to do anything with regard to those. The contractual language provides that if 160 lots/homes are not sold within the first two years, Chief has the right to request that lots be deeded to it. It has no obligation to exercise that right. Finally, the evidence is that Chief delivered $1,000,000.00 to the Developer, now the debtor, and the Agreement provides that it does not have to be repaid.

Chief has no ongoing obligations under this Agreement and, therefore, the Agreement is not executory. It cannot be rejected under § 365 of the Bankruptcy Code.

Finally, it is clear from the testimony of the representative of the debtor at the first meeting of creditors that the real intent of this whole case is to eliminate the restrictive covenant which has been filed, recorded, and runs with the land. That restrictive covenant includes the requirement that only Bonna Villa homes can be placed on the lots. That portion of the restrictive covenant can only be amended by the agreement of both the Developer/Debtor and Chief. Even if the Agreement was determined to be executory and rejected, such rejection does not affect the restrictive covenant or the right of Chief under such covenant.

IT IS ORDERED that the Motion to Reject Lease or Executory Contract, Fil. #20, is denied.

DATED:     July 8, 2011

BY THE COURT:

/s/ Timothy J. Mahoney
United States Bankruptcy Judge

Notice given by the Court to:
   *Trev Peterson
   Stephen Nelsen
   Bruce Hart

* Movant is responsible for giving notice of this order to all other parties not listed above if required by rule or statute.